Filed 6/8/23  Stark v. County of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| REGINALD F. STARK, | B311930 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV39957) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Lyon Law, Geoffrey C. Lyon and Henry Harmeling for Plaintiff and Appellant.

Lawrence Beach Allen & Choi, Paul B. Beach and Oscar A. Bustos for Defendant and Respondent.

———————————————

Reginald F. Stark appeals the grant of a motion for summary judgment in favor of the County of Los Angeles (the County)[1] on his complaint alleging several violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code[2], § 12940 et seq.) and another related claim against the County, stemming from the termination of his employment with the Los Angeles County Probation Department (the Department) in November 2018.  Stark primarily contends that the trial court erred in granting summary judgment because there were triable issues of fact regarding the motives underlying his termination.  We disagree, and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

### I.     Stark's employment with the County

Stark was employed with the Department from 1987 through his termination on November 27, 2018.  Stark began his career as a night officer, was promoted to a Detention Services

---

[1] The County was erroneously sued as Los Angeles County Probation Department.

[2] All undesignated statutory references are to the Government Code.

[3] At the outset, we agree with the County that the factual background in Stark's opening brief is deficient because it includes only lengthy string citations at the end of each paragraph, and those citations often fail to support the alleged facts.  These infirmities violate rule 8.204(a)(1)(C) of the California Rules of Court, constraining our review and permitting us to disregard the offending portions of the brief.  (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745; *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1.)

Officer (DSO) in 1989, and then, in the mid-1990s, was promoted again to the title of Senior DSO. Senior DSOs are peace officers charged with supervising staff and juveniles in juvenile halls.

## II. Stark's promotion applications

Stark alleged that he applied for further promotions in 2008, 2016, 2017, and 2018.[4] The County's civil service rules governed the promotions that Stark sought. Those rules utilize an examination process and banding system to ensure fair and impartial consideration. An applicant's examination score determines their placement into one of five " 'bands.' " Those applicants whose score is greater than 70 percent are placed on a certification list within their applicable band and are eligible for appointment to the positions, while applicants with a score of less than 70 percent are not placed in a band and are ineligible for appointment. Applications are not anonymous.

In 2008, a superintendent and director promised Stark a promotion if he transferred to another facility and " 'turned the building around.' " Stark was never promoted despite satisfying those prerequisites and passing the examination for promotion and being placed in Band 3. In 2017, Stark took the exam again, missed a passing score by a few points, but did not appeal his

---

[4] Stark provided no information regarding his 2016 application and the County presented evidence that it did not offer examinations in 2015 or 2016, so Stark could not have applied.

score.[5]  In 2018, Stark did not attend the October 2018 exam that he was scheduled to take.[6]

## III. Stark's early disciplinary history

In 1990, Stark was suspended for inappropriate conduct after pulling up a minor's pants when the minor failed to comply with his instructions to do so.  In 1997, Stark was suspended for failing to maintain employee conduct standards after he was convicted of driving on a suspended license.

On June 4, 2010, Stark was discharged from employment for misuse of force, inappropriate and unprofessional conduct, falsifying a report, untruthfulness during an official investigation, interfering with an administrative investigation, conduct unbecoming a peace officer, and failure to exercise sound judgment, in connection with a misuse of force incident surrounding the physical restraint of a minor on June 3, 2009. Stark appealed his discharge, and, in 2015, the grounds for discipline were upheld, but the discharge reduced to a suspension and Stark was reinstated to his position.

## IV. Stark's treatment after reinstatement

Starting in November 2016, several incidents occurred between Stark and Supervising DSO LaCour Harrison, who did

---

[5] Stark alleged he was not permitted to appeal but the County provided documentary evidence that Stark was advised in writing of his right to appeal and did not appeal.

[6] Stark claimed that the exam had to be rescheduled, but the County provided evidence that the exam proceeded as scheduled and Stark was advised of his right to reschedule the exam but did not do so.

not supervise Stark but would occasionally direct Stark when Harrison served as Officer of the Day.

According to Stark, in November 2016, Harrison instructed Stark to attend "staff training" that day.  When Stark responded, " 'Okay, I'm just gonna go in my unit and drop my stuff off,' " Harrison told him, " 'No, I ordered you not to go anywhere, just stay right here.' "  Harrison then stood in front of the door and said to Stark, " 'You're not gonna go past me.' "  Stark then responded, " 'Check yourself, I'm gonna go to my unit.  I'm allowed to go to take a dump.' "  In December 2016, Stark observed Harrison get frustrated when a coworker to whom Harrison was attracted praised Stark's work.

In January 2017, Harrison allegedly instructed Stark's unit by walkie talkie to open a door for a minor.  Stark responded, " 'I'll be right there, I'll get it,' " to which Harrison said, " 'Right now, get your butt up right now and do it.' "

On February 20, 2017, Stark was in his unit when a coworker asked via radio for assistance transporting a minor.  Harrison came into the unit and yelled at Stark, " 'Don't you hear that?  Go assist her!  Do your fucking job!' "  Harrison appeared to have his fist clenched and another supervisor had to pull him away.

On February 20, 2017, Stark submitted a written complaint alleging that Harrison was threatening and hostile toward him.[7]  One of Stark's supervisors filed a complaint on

---

[7] The written complaint alleged a February 14, 2017 incident similar in nature to the February 20, 2017 incident.  The parties' record citations do not make clear whether these were, in fact, separate incidents.

Stark's behalf and met with both Harrison and Stark a few days after the incident to instruct them to be courteous with one another. Harrison denied the allegations. In September 2017, the complaint was deemed non-jurisdictional and returned to the facility to handle. Stark and Harrison were instructed to not engage in improper workplace conduct. Around the same time, County headquarters instructed Stark's supervisor to reassign Stark to another juvenile hall.

## V.    September 17, 2017 incident and resulting November 27, 2018 discharge

Before Stark could be reassigned, on September 17, 2017, Stark and Harrison had a physical altercation which was subsequently investigated by the Department's Internal Affairs Bureau. Harrison alleged that Stark physically assaulted him by pushing him and knocking him off balance as Stark entered the unit office. In response, Harrison pushed Stark back to create space and prevent further physical confrontation. However, Stark alleged that Harrison had his back to Stark inside the door to the unit office and was blocking the entrance. As Stark attempted to pass Harrison, Stark said, " 'Excuse me.' " Stark claimed Harrison then turned, knocking Stark's cup of water from his hand. Stark alleged that he told Harrison, " 'I know you saw me. You didn't see me walk in here? You didn't hear me say excuse me?' " and that Harrison replied, " 'I didn't see you. It was an accident.' " Stark further recalled that, after the cup fell to the ground, Stark extended his open hand in order to deescalate the situation.

Harrison and Stark immediately submitted written complaints. The written referral of the complaints noted that

6

video evidence was available but the incident was "not observable."

In a July 2018 report, the Internal Affairs investigation determined that Harrison's account was supported by the majority of Department employees who were interviewed. No employee corroborated Stark's allegation that Harrison initiated physical contact. The only witnesses who supported Stark's allegation were two juveniles (out of seven juveniles interviewed), both of whom were under Stark's direct supervision. Internal Affairs thus found the allegation of workplace violence against Stark substantiated, but the allegation against Harrison inconclusive. The "thorough," "credible and complete" nature of the investigation rendered it unnecessary to reinterview witnesses, although Internal Affairs "[a]t times" did reinterview witnesses in some cases.

On or about September 16, 2018, Stark was given written notice of the County's intent to discharge him based on his violation of departmental policies, including workplace violence, discourtesy to fellow employees, failure to follow established rules and regulations, and failure to exercise sound judgment. The County deemed discharge necessary because of the investigative findings, the offense's seriousness in relation to Stark's role as a peace officer in a juvenile institution, and Stark's prior history of serious discipline after similar misuse of force incidents. Stark was ultimately discharged on November 27, 2018 following a *Skelly* hearing[8]. Stark was 55 years old at the time.

---

[8] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 215, establishes that an agency considering disciplinary action against a public employee must accord certain pre-removal safeguards,

## VI. July 31, 2018 incident and the resulting July 25, 2019 discharge held in abeyance

On September 19, 2017, Stark agreed to be reassigned to another facility—a larger, older, and more challenging work environment than his prior facility—while the investigation into the September 17, 2017 incident was carried out. On July 31, 2018, Stark was involved in a physical altercation with another coworker that resulted in a separate Internal Affairs investigation. Stark submitted a written complaint regarding the incident claiming that, after Stark confronted his coworker regarding the coworker's alleged inappropriate behavior, the coworker " 'physically assaulted' him, 'began to bump his body into [him],' and 'jump[ed] from a seated position in his chair and push[ed] [him] full force with his body.' "

Twelve witnesses were interviewed and none corroborated Stark's account. Video evidence of the incident was available, but did not depict any physical assault by the coworker. Internal Affairs therefore concluded that the allegations against Stark of inappropriate staff relations and knowing falsification of his report of the incident were substantiated.

Based on these investigative findings and Stark's other history of discipline, the County determined that the July 31, 2018 incident supported Stark's discharge, as well. On or about July 25, 2019, Stark was sent a notice advising him of the County's intent to discharge him based on his violation of departmental policies and various grounds, including falsification of reports or documents. However, because Stark had already

---

including opportunity to respond to the charges upon which proposed discipline is based, in order to satisfy due process.

been discharged on November 27, 2018, this discharge was held in abeyance pending the outcome of any appeal. Stark initially filed an appeal of his discharge, but later withdrew his appeal and his discharge became final.

## VII. Stark's medical leave and accommodation requests

On or about July 27, 2018, Stark visited the emergency room complaining of migraines. A doctor concluded Stark may have injured nerves in his neck and shoulder area while restraining a 17 year old on or about July 23, 2018, and that he should not go back to work. Stark was placed off of work intermittently beginning August 1, 2018. Stark was then eligible for his full FMLA[9] entitlement of 12 weeks of leave during a 12-month period. FMLA leave entitlement and use was calculated and tracked by the Return to Work Unit using the Department of Human Resources' Absence Management System. Because Stark worked 40 hours per week during this period, his 12-week entitlement amounted to 480 leave hours.

Each medical note that Stark presented seeking FMLA leave was approved until his entitlement was exhausted on November 19, 2018. Specifically, Stark was granted and took FMLA leave from August 1 through 4, 2018 (24 leave hours), August 24 through September 27, 2018 (200 hours), and October 5 through November 19, 2018 (256 hours). Stark was then granted a medical leave of absence from November 20, 2018 through December 20, 2018. Stark remained on this leave of absence until his discharge from his employment on November 27, 2018. Apart from his August 1 to November 19, 2018 FMLA

---

[9] FMLA refers to the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.).

9

leave, Stark did not request any other FMLA leave in 2017 or 2018.

## VIII. Complaint and summary judgment motion

On November 1, 2019, Stark filed a complaint of discrimination with the Department of Fair Employment and Housing (DFEH) and received an immediate right-to-sue letter. He filed his lawsuit against the County on November 5, 2019 asserting eight causes of action under FEHA—(1) medical leave retaliation (§ 12945); (2) medical leave discrimination (§ 12945.2); (3) disability discrimination (§ 12940, subd. (a)); (4) failure to engage in the interactive process (§ 12940, subd. (n)); (5) failure to reasonably accommodate and retaliation for requesting and using accommodations for disabilities (§ 12940, subd. (m)); (6) age discrimination (§ 12940, subd. (a)); (7) retaliation (§ 12940, subd. (h)); and (8) failure to prevent discrimination and retaliation (§ 12940, subds. (j) & (k))—as well as one non-FEHA claim—(9) whistleblower retaliation (Lab. Code, §§ 1102.5 & 1102.6).

On January 4, 2021, the County moved for summary judgment or, alternatively, summary adjudication. Stark filed an opposition on March 5, 2021, and the County filed a reply and evidentiary objections to Stark's exhibits on March 12, 2021. Stark argued that any of the County's legitimate, nondiscriminatory reasons for his discharge were pretextual because the County did not adequately investigate the September 17, 2017 incident, that Harrison had a "long history" as an aggressor, and, per the testimony of Stark and three other former County employees, the Department had a pattern of discharging or forcing out older employees.

The court heard argument from the parties on March 19, 2021. At the outset, Stark's counsel conceded that Stark's claims were based only upon his termination, and that the events that occurred prior to the termination were only being used to demonstrate intent. The court concluded Stark failed to present evidence, or to raise a triable issue of material fact, demonstrating that the County's legitimate, nondiscriminatory reasons for Stark's discharge were merely pretext for discrimination or retaliation. In so holding, the court sustained the County's objections to the declarations that Stark submitted from other former County employees due to a lack of foundation, relevance, and hearsay, among other reasons.

Stark timely appealed.[10]

---

[10] The court filed a judgment on March 19, 2021 and an amended judgment on April 7, 2021. The two judgments contain minor linguistic differences, and the amended judgment contains a line for a costs award which the trial court left blank. On March 31, 2021, Stark was served with notice of entry of the original judgment, and there is no record indication of service of notice of entry of the amended judgment. Stark's April 14, 2021 notice of appeal purports to appeal from the March 19, 2021 judgment only. Any failure to appeal the amended judgment does not affect our jurisdiction because Stark's appellate claims concern rulings included in the initial judgment from which he timely appealed, the amended judgment does not substantially modify the initial judgment, and Stark's notice of appeal was timely as to both judgments. (See *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 [if an amended judgment is not a "substantial modification" of the original, "any changes are considered to relate back to the original judgment and the time to appeal runs from the entry of the first judgment"].)

11

# DISCUSSION

## A.    Standard of review

The applicable standard of review of a ruling on a motion for summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850; see Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action … cannot be established' by the plaintiff.  [Citation.]' " (*Aguilar*, at p. 853.)  A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim (*Aguilar*, at p. 854), or that "there is a complete defense to that cause of action." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 997.)

On appeal from a summary judgment ruling, we review the record de novo and independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz*, *supra*, 24 Cal.4th at p. 334.)  We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment.  (*Saelzler*, at p. 768.)

12

"In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court.  We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)  "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)  Thus, a reviewing court "will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402.)

## B.  Age and disability discrimination/retaliation and derivative claims

In this case, all but one of Stark's causes of action relate to violations of the FEHA.  Several of those claims, namely disability discrimination and retaliation for requesting/using accommodations for disabilities, age discrimination, and retaliation for opposing FEHA violations, "share[ ] a common critical component with the others:  the action taken by the employer about which [Stark] complain[s] must have been motivated by a discriminatory purpose—or retaliatory motive— against [Stark] because of h[is] protected status." (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 76 & fn. 6.)  Likewise, as Stark concedes, his failure to prevent discrimination and retaliation claim is "derivative" of his discrimination and

13

retaliation claims. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1166; *Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 56.) We thus address these claims together, and conclude for similar reasons that the trial court properly granted summary adjudication as to them.

### 1. Applicable law

" 'In California, courts employ at trial the three-stage test that was established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802, to resolve discrimination claims . . . . [Citation.] At trial, the employee must first establish a prima facie case of discrimination, showing " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' " ' " ' (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2 (*Reid*).) A prima facie claim arises 'when the employee shows (1) at the time of the adverse action [he was a member of a protected class], (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job' (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003, fn. omitted (*Hersant*)), and (4) the adverse action occurred 'under circumstances which give rise to an inference of unlawful discrimination.' (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253.) 'Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is " 'legitimate' " if it is "facially unrelated to prohibited bias, and

14

which if true, would thus preclude a finding of discrimination." [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination.' (*Reid*, at p. 520, fn. 2, italics omitted.)" (*Nakai v. Friendship House Assn. of American Indians, Inc.* (2017) 15 Cal.App.5th 32, 38–39.)

In the summary judgment context, " 'the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory [or nonretaliatory] factors.' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*).) At this stage, the employer need only proffer "competent, admissible evidence" of its reasons, unrelated to bias or retaliatory motive, for the adverse employment action. (*Guz, supra*, 24 Cal.4th at p. 357.) The proffered reasons, "if nondiscriminatory [or nonretaliatory] … need not necessarily have been wise or correct." (*Id.* at p. 358; see *Serri*, at p. 861 [noting examples of legitimate, nondiscriminatory reasons for adverse action, like employee's failure to meet performance standards or loss of confidence in employee].)

If the employer meets its initial burden, the plaintiff must then " 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory [or retaliatory] *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination [or retaliation] or other unlawful action.' " (*Serri, supra*, 226

Cal.App.4th at p. 861; *Guz, supra,* 24 Cal.4th at p. 356.) "It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory [or retaliatory] motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri,* at p. 862.)

Ultimately, "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory [or retaliatory]." (*Guz, supra,* 24 Cal.4th at p. 361.) " ' "Circumstantial evidence of ' "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate [or retaliate]' on an improper basis." ' " (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1182 (*Husman*).)[11] To show pretext, a plaintiff can use three types of evidence: "(1) direct evidence … such as statements or admissions, (2) comparative evidence, and (3) statistics." (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816.)

---

[11] The *McDonnell Douglas* test does not apply where the plaintiff presents direct evidence of discriminatory intent. (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144–1145.) The parties agree there is no such evidence in this case, and therefore the *McDonnell Douglas* test applies.

16

## 2. *Stark failed to present substantial evidence that the County's nondiscriminatory reasons were pretextual*

As the party seeking summary judgment, the County had the initial burden of presenting admissible evidence showing either that one or more elements of Stark's prima facie case was lacking or that the decision to terminate his employment[12] was based on legitimate, nonretaliatory factors. (*Serri, supra*, 226 Cal.App.4th at p. 861.) Because the County does not challenge Stark's prima facie case in its briefing on appeal, we focus our analysis on the stated reason for terminating Stark's employment (his workplace misconduct) and on Stark's responsive showing as to whether that reason was false or pretextual.

To establish a legitimate reason for a disciplinary action, the employer must " ' "clearly set forth, through the introduction of admissible evidence, the reasons for the [termination or demotion]. The explanation provided must be legally sufficient to justify a judgment for the [employer]." ' " (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 149.) There can be no meaningful dispute that the County did so here, providing evidence that Stark was involved in a physical altercation in September 2017 with Harrison that became the subject of an Internal Affairs investigation. That investigation, which involved interviews with several witnesses, confirmed Harrison's allegation that Stark physically assaulted him, with

_____

[12] As below, Stark has not disputed that the only actionable adverse employment action is his November 2018 discharge, contending instead that any prior grievances are relevant only to demonstrate discriminatory intent. We therefore limit our analysis accordingly.

17

no Probation Department employees corroborating Stark's allegation that Harrison was, in fact, the aggressor. Based on these findings, as well as the seriousness of the offense and Stark's other disciplinary history including other misuse of force incidents, the County determined that discharge was appropriate. For these reasons, we are satisfied that Stark's employment was terminated because he violated the County's policy against workplace violence on at least one occasion (i.e., September 2017). Violation of an employer's workplace violence policy is a legitimate nondiscriminatory reason for termination. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 168.)

Nonetheless, Stark argues that the September 2017 incident with Harrison was pretext for age and/or disability discrimination and retaliation because "Harrison has a long history of being the aggressor" during several other incidents between Stark and Harrison, because there were conflicts in the witness statements related to the September 2017 incident, because the County delayed its disciplinary action for nine to 12 months after its investigation concluded and failed to verify the validity of the investigation, and Stark's termination was inconsistent with his prior suspensions for similar conduct. Further, there were three other individuals who Stark identified in his summary judgment opposition, appending their testimony by way of declarations or deposition transcripts, suggesting that the Department had a practice of pushing out older employees using false charges and investigations as they neared retirement age.[13] We address each category of evidence in turn, and

---

[13] Although the factual recitation in Stark's opening brief summarizes the denials of his promotion requests at length,

conclude that taken as a whole the evidence was insufficient to permit an inference of discriminatory or retaliatory motives. (*Husman, supra,* 12 Cal.App.5th at p. 1182.)

Stark's contentions regarding Harrison's prior aggressive behavior, inconsistencies among the statements of witnesses to the September 2017 incident, the inadequate verification of the investigation into the September 2017 incident, and inconsistent discipline are merely attempts to undermine the integrity of the County's investigation, which does not ordinarily suffice to defeat summary judgment. (See *Serri, supra,* 226 Cal.App.4th at p. 863 [under California law, it is not enough for a plaintiff to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent"].)

In any event, Stark's arguments lack merit. As we have noted, the County conducted a thorough investigation of the incident, including interviews of at least a dozen witnesses, including Stark, as well as review of video footage.[14] Nearly all of

Stark presents no argument as to the bearing of these facts on his legal claims. In the absence of such argument, we decline to address the allegations further. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C) [appellant must demonstrate error with specific arguments under specific headings marshalling specific facts]; see *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

[14] Though Stark appears to complain that the Department failed to "preserve video surveillance of the [September 2017]

the dozen or so witnesses interviewed, except for two juveniles under Stark's supervision, corroborated Harrison's account. Some of the purported inconsistencies in the evidence that Stark raises are based on incomplete or mischaracterized accounts of the witnesses' statements.[15]

Even accepting Stark's characterization of his prior, largely uncorroborated interactions with Harrison as a "long history" of aggression by Harrison, Internal Affairs afforded Stark ample opportunity to account for any such incident(s) in his interview, and its resulting written report recounted in detail Stark's prior complaints regarding Harrison, as well as the Department's efforts to remedy the issues, including interviewing the parties and issuing reprimands. Thus, the Department gave due consideration to any history between Stark and Harrison, which had not, up until that point, resulted in physical contact to the extent that occurred in September 2017.

That the County did not verify or reinterview witnesses suggests no irregularity. Indeed, the decisionmaker testified that verifying witness statements was not necessarily common, and

---

incident", the record suggests otherwise. Per the referral of the complaints, video evidence was available but the incident was "not observable."

[15] For example, Stark suggests that "all of the staff interviewed" were doing other things when the incident occurred and did not see "anything until the cup hit the floor." However, Stark references only the statements of three staff members, and the Internal Affairs report establishes that each of those witnesses fully observed the incident from the outset, *even though* they stated that they were initially doing other things when their attention was drawn to Stark and Harrison.

was especially unnecessary in a case such as this, which involved a "thorough," "credible and complete" investigation where the conclusions were corroborated by the vast majority of witnesses.

Stark further contends that his discharge was pretextual because it was "internally inconsistent" with punishment—namely, shorter periods of suspension—he had previously received for like incidents. (See, e.g., *Chuang v. University of California Davis* (9th Cir. 2000) 225 F.3d 1115, 1127 [petitioner may show that employer's proffered explanation is pretextual by establishing that it is internally inconsistent or otherwise unbelievable].) This argument—asserted in the first instance in Stark's reply brief—is both forfeited (see, e.g., *Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 350 [argument first raised in a reply brief is forfeited on appeal]) and meritless. The disparities in punishment, culminating in the decision to terminate Stark for his escalating misconduct, were eminently rational under the circumstances, and hardly reflective of pretext for a discriminatory or retaliatory motive, even despite any temporal proximity with the protected conduct alleged by Stark. (See, e.g., *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 354 [reasoning that employers must be afforded latitude to terminate employees engaging in improper conduct, otherwise it "would unnecessarily tie the hands of employers"].)

Stark's further suggestion that the discharge decision was pretextual because the County did not discharge him for nine to 12 months after the conclusion of the investigation into the September 2017 incident lacks support in the record. The County official who made the ultimate decision to discharge Stark testified that she made her decision nine to 12 months after the

21

September 2017 incident, rather than nine to 12 months after the investigation had concluded.  This testimony comports with the date of the July 2018 written report documenting Internal Affairs' conclusions with respect to the September 2017 incident.  Thus, Stark vastly overstates any delay between the conclusion of the investigation and his discharge.

Finally, the accounts of three other former County employees attached to Stark's opposition papers likewise fail to provide substantial evidence of pretext.  The declaration of former Senior DSO George Graves stated that Graves retired at age 62 as a result of "false accusations and investigation" stemming from a workplace violence allegation.  Graves was transferred to another location with a longer commute during the investigation.  After the investigation concluded without any disciplinary action, Graves "felt as though the investigation was trying to prove that [he] did something rather than trying to find out what happened" and decided to retire early.  Graves "observed a pattern within the Department, where [the Department] would try to find ways to force employees out when they get close to retirement age."  Graves insisted this happened with "a few other [Department] employees" but provided no further details.

The declaration of former Senior DSO Byron Atkins similarly stated that Atkins retired at age 55 as a result of "false accusations and investigation" stemming from an allegation of excessive force in the workplace.  During the investigation, Atkins was reassigned to another position and told by a superintendent and director that it was " 'time to retire.' "  After the investigation concluded, Atkins "chose to retire because [he] believed the Department would punish [him] even if they found

that [he] had done nothing wrong." Atkins believed this because he "noticed a pattern" of pushing out older staff with unwarranted discipline, but Atkins provided no further details regarding this "pattern."

Stark also provided deposition testimony from a third former employee, Keith Flanagan, who stated during his deposition that "there are a lot of people that had—when I say 'a lot,' I would say from my opinion—from my opinion, without knowing all of the things because my own investigation mushroomed into many other investigations and the County had an unprecedented way of discharging more than—I think it was more than 10 supervisors that all were above 40 or 50. And I don't—I can't speak for the age of the subordinates; subordinates were under that. And that includes one director, as well, that is above 50."[16]

As an initial matter, the trial court sustained the County's objections to the bulk of this evidence. Stark does not challenge those evidentiary rulings on appeal, and he has therefore forfeited review of those materials. (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41.)

Even were that not the case, the evidence—which only truly pertains to Stark's age discrimination/retaliation claims— was, in some cases, equivocal, and otherwise at most established the declarants' "subjective beliefs" that they were discriminated against for their age, which does not "create a genuine issue of

---

[16] Although Stark alleges that Flanagan was himself subject to age discrimination when he was terminated in 2017, the deposition excerpt that Stark cites does not address Flanagan's termination, much less Flanagan's age or position with the Department.

23

fact" in the absence of corroboration.  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)  Stark presented no such corroboration, whether in the form of statistics or other context regarding the trends and practices of the Department with respect to resignations and termination decisions.  Thus, Stark's evidence was, at most, anecdotal, and therefore raised "at best, only a weak suspicion that discrimination [or retaliation]" motivated his termination, which is insufficient to withstand summary judgment.  (See *Guz*, *supra*, 24 Cal.4th at p. 369 [summary judgment proper despite plaintiff-employee's inclusion of further information regarding the pool of employees by which to judge comparators allegedly subject to age discrimination, reasoning that samples did not demonstrate statistically reliable discriminatory pattern]; *Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 801 [similar].)

In sum, Stark failed to present substantial evidence that the County's nondiscriminatory reasons for discharging him were pretextual.  (*Husman*, *supra*, 12 Cal.App.5th at p. 1182.)  We therefore conclude summary adjudication of Stark's disability discrimination and retaliation for requesting/using accommodations for disabilities, age discrimination, and retaliation for opposing FEHA violations claims was proper. (*Collins v. Hertz Corp.*, *supra*, 144 Cal.App.4th at pp. 76–77 & fn. 6.)  By extension, summary adjudication of Stark's "derivative" failure to prevent discrimination and retaliation claims was also appropriate.  (*Featherstone v. Southern California Permanente Medical Group*, *supra*, 10 Cal.App.5th at p. 1166; *Glynn v. Superior Court*, *supra*, 42 Cal.App.5th at p. 56.)

24

## C. California Family Rights Act (CFRA) claims

Next, Stark raises two claims related to his exercise of his rights under the CFRA. We agree with the trial court that summary adjudication of both claims was appropriate.

"In 1991, the Legislature enacted the CFRA. (§ 12945.2.) The CFRA, which is contained within the FEHA (§ 12900 et seq.), 'is intended to give employees an opportunity to take [leave] from work for certain personal or family medical reasons without jeopardizing job security.' [Citation.]

"Generally, the CFRA makes it an unlawful employment practice for an employer of 50 or more persons to refuse to grant a request by an employee to take up to 12 workweeks in any 12-month period for family care and medical leave. [Citation.] By prohibiting 'employment discrimination based upon family and medical leave, the CFRA strengthens the FEHA's general goal of preventing the deleterious effects of employment discrimination, and also furthers the CFRA's specific goal of promoting stability and economic security in California families.' [Citation.]" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 878 (*Faust*).)[17]

There are two types of actionable CFRA claims. An "interference" claim is based on the employer's interference with an employee's rights under the CFRA. (*Faust, supra,* 150 Cal.App.4th at p. 879.) Such a claim does not involve the *McDonnell Douglas* burden-shifting analysis, but " 'simply

---

[17] The FMLA is the CFRA's federal counterpart. To the extent that they are not inconsistent with California law, the federal regulations interpreting the FMLA have been incorporated by reference into the CFRA. (Cal. Code Regs., tit. 2, § 11096.)

requires that the employer deny the employee's entitlement to [CFRA leave].' [Citation.]" (*Ibid.*)

The second category of claims involves retaliation or discrimination for exercising one's CFRA rights. By contrast, these claims implicate the *McDonnell Douglas* burden-shifting framework. (*Faust, supra*, 150 Cal.App.4th at p. 885.) To make out a prima facie case of CFRA discrimination or retaliation, a plaintiff must show: "(1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action because he or she exercised the right to take CFRA leave." (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 491, italics omitted.)

Here, Stark has alleged separate causes of action for CFRA interference[18] and retaliation. Regarding the former, Stark argues that he was "notified" he had exhausted his CFRA leave when he had not, in fact, exhausted his leave. He further

---

[18] The second cause of action is formally denominated as a "medical leave discrimination" cause of action, but factually alleges that Stark was "discouraged … from taking and denied … medical leave … in part by terminating [Stark's] employment" without mention of discrimination. We therefore construe the purported "discrimination" cause of action as an interference claim, just as the parties have at the summary judgment stage and on appeal. (See, e.g., *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125 [substance of allegations in pleading "delineates the scope of issues before a court on summary judgment"].) However, to the extent Stark's complaint can be construed to also allege medical leave discrimination, such a claim fails for the same reasons Stark's retaliation claim fails.

contends that he was terminated before his CFRA leave completed and therefore he was denied the CFRA leave to which he was entitled. These arguments are belied by the record. The County's summary judgment motion included documentary proof conclusively establishing that none of Stark's CFRA leave requests in 2017 and 2018 were denied and that he exhausted his FMLA leave before he was terminated. Stark points to no contrary evidence in his reply brief. Because Stark was never denied CFRA leave, summary adjudication of his CFRA interference claim was appropriate. (*Faust*, *supra*, 150 Cal.App.4th at p. 879.)

Stark's CFRA retaliation claim fares no better. Stark appears to suggest that he was terminated in retaliation for exercising his rights to CFRA leave because of the "temporal proximity" between the termination and his taking leave. However, the authorities Stark cites for this proposition merely establish that temporal proximity between a protected activity and an adverse employment action may suffice to establish a prima facie case of retaliation. (See, e.g., *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [" ' "causal link" ' " essential to prima facie case can be demonstrated by circumstantial evidence including " ' " 'proximity in time between the protected action and allegedly retaliatory employment decision' " ' "].) Stark's cases thus do not stand for the proposition that temporal proximity alone suffices to withstand summary adjudication under California law. Indeed, it is well established that, while evidence of temporal proximity is relevant as to pretext, it is not sufficient to raise a triable issue of fact. (*Arteaga v. Brink's, Inc.*, *supra*, 163 Cal.App.4th at p. 353; see

*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 931 ["[m]ere sequence is not enough"].)

Further, as the County notes, the investigation that led to Stark's termination preceded the injuries that undergird his disability and medical leave-related claims. "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." (*Smith v. Allen Health Systems, Inc.* (8th Cir. 2002) 302 F.3d 827, 834.)[19] We also note that the County was required to complete its investigation of allegations of misconduct within one year under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (§ 3304, subd. (d)(1)). (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 60–63.) The notice of intent to discharge was issued exactly one day before the one-year mark after the incident, strongly suggesting that it was the incident—and not Stark's disability or resulting leave—that motivated the decision to terminate his employment. For these reasons and the several other reasons articulated in the preceding section, Stark failed to present substantial evidence that his termination for misconduct was merely a pretext for retaliating against him for exercising his CFRA rights.[20]

---

[19] This logic applies equally to Stark's disability discrimination and retaliation claims discussed in the preceding section. (See, e.g., *King v. United Parcel Service, Inc.*, *supra*, 152 Cal.App.4th at p. 436 [pretext claim is undercut by the fact that dispute preceded disability in time].)

[20] The parties dispute whether the County's decisionmaker was aware of his medical leave and/or whether such knowledge

Therefore, the trial court did not err in granting summary adjudication of Stark's CFRA interference and retaliation claims.

## D. Failure to engage in the interactive process and failure to reasonably accommodate

We next assess whether the trial court properly granted summary adjudication as to Stark's further FEHA-based claims that the County failed to reasonably accommodate his disability and failed to engage in the interactive process. We conclude that it did.

"Under section 12940, it is an unlawful employment practice 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the employer demonstrates doing so would impose an undue hardship. (§ 12940, subd. (m).) The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position [with accommodation]); and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.) "A reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job he or she holds or desires." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373.)

Section 12940, subdivision (n) imposes an additional and "separate" duty on employers to engage in an interactive process

---

can be legally imputed to them. Our conclusions assume for argument's sake that the County's decisionmaker was aware of his medical leave.

29

regarding reasonable accommodations. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1003.) That provision establishes that it is an unlawful practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).)

Stark's argument as to both of these claims is virtually identical, namely that the County's decision to terminate him prior to the conclusion of his medical leave constituted a failure to reasonably accommodate his disability and engage in the interactive process. We disagree.

At the outset, we note that Stark has not identified a reasonable accommodation that would have been available to him during the interactive process. (See, e.g., *Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 379 [employee must specifically identify available reasonable accommodation at summary judgment stage].) To the extent that the reasonable accommodation was remaining in his position, the County sufficiently demonstrated that such an accommodation was not reasonable because Stark's misconduct rendered him unable to perform the essential duties of his position. (See *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 829 [being placed on medical leave instead of discharge for misconduct is not reasonable accommodation under California law; " '[s]ince reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability' "].) Stark's process-based claim fails for the same reason. Because

the misconduct that led to his termination occurred well before his disability and accommodation requests, "[n]o reasonable accommodation could have cured those violations at that point." (*Id.* at p. 830 [rejecting failure to engage in interactive process claim].)

For these reasons, the trial court did not err in summarily adjudicating Stark's reasonable accommodation and interactive process causes of action in favor of the County.

## E.     Whistleblower retaliation

We turn finally to Stark's sole non-FEHA claim for whistleblower retaliation (Lab. Code, §§ 1102.5 & 1102.6).  The County contends—and we agree—that summary adjudication of this claim was appropriate because Stark failed to exhaust his administrative remedies.

" 'The Government Claims Act (§ 810 et seq.) "establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim for money or damages with the public entity.  (§ 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity.  (§ 945.4.)" [Citation.]' " (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219.)

"Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements … even though it is technically deficient in one or more particulars.' [Citation.]  'The doctrine is based on the premise that substantial compliance fulfills the purpose of the claims statutes, namely, to give the public entity timely notice of the nature of the claim so that it may investigate and settle those having merit without

31

litigation.' " (*Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 38, quoting *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713.)  Nonetheless, this doctrine "cannot cure the total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." (*Dilts v. Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 37; *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083.)

Furthermore, under section 911.2, subdivision (a), "[c]laims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action." (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591.) " 'Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity.  [Citation.]  "Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity." [Citation.]' " (*J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1219.)  " 'The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity.  [Citation.]' " (*Ibid.*)  "Accrual for purposes of the Act is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118.)

Here, Stark acknowledges he did not file a claim with the County, but contends that his DFEH complaint substantially complied with the Government Claims Act.  Stark cites no

authority for the proposition that a DFEH complaint may suffice to exhaust administrative remedies under section 911.2.  In fact, several cases suggest otherwise.  (See, e.g., *Olson v. Palm Drive Hosp.* (N.D.Cal. Feb. 10, 2012, Civ. A. No. C-11-4606 MMC) 2012 U.S.Dist. Lexis 16564, *7–9 [collecting cases].)

Even were that not the case, as the County further argues, Stark's DFEH complaint was filed on November 1, 2019, more than six months after Stark's November 27, 2018 discharge, and was therefore untimely.  (§ 911.2, subd. (a); see *Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 246 [section 911.2, subdivision (a)'s six-month presentation requirement applies to Labor Code violation].)[21]  Stark does not argue otherwise in his reply brief.

We therefore discern no error in the trial court's summary adjudication of Stark's whistleblower retaliation claim.

---

[21] Because Stark sought noneconomic damages in the form of "past and future emotional distress," the six-month deadline applicable to personal injury claims applies here.  (*Willis v. City of Carlsbad, supra*, 48 Cal.App.5th at p. 1118 & fn. 9.)

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HEIDEL, J.*


We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

34